## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SHAWNETTA COLLINS, | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| v. | ] | **2:18-cv-00211-ACA** |
| | ] | |
| KOCH FOODS INC., et al., | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendants' joint motion for summary judgment. (Doc. 47). In addition, Plaintiff Shawnetta Collins requested, in her response brief, that the court strike paragraph 31 of Defendants' statement of undisputed facts. (Doc. 61 at 6 ¶ 31).

Ms. Collins is an African-American woman. Defendants Koch Foods, Inc., and Koch Foods of Alabama, Inc. (collectively, "Koch Foods"), are related companies that, at the time of the events involved in this lawsuit, ran two poultry processing and packaging plants in Montgomery, Alabama. At that time, Defendant Robert Elrod was the Director of Human Resources for Koch Foods. Until July 2017, Ms. Collins was the Human Resources Manager for one and then the other of the two plants. In July 2017, Ms. Collins married the Plant Manager for the two plants, and Defendants fired her for violating their anti-fraternization policy. She

has now brought suit against Defendants.  The only claims remaining in the case[1]

are:

(1) race discrimination, in violation of 42 U.S.C. § 1981, against Mr. Elrod and Koch Foods, Inc., ("Count One") (doc. 10 at 4–13)

(2) sex discrimination, in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, against Koch Foods, Inc., and Koch Foods of Alabama ("Count Two") (doc. 10 at 13–16)

(3) intentional infliction of emotional distress, under Alabama law, against all three defendants ("Count Four") (doc. 10 at 18–19)

(5) negligent and wanton hiring, training, supervision, and retention, in violation of Alabama law, against all three defendants ("Count Five") (doc. 10 at 19–23)

First, the court **DENIES** Ms. Collins' motion to strike paragraph 31 of

Defendants' statement of undisputed facts because, contrary to her assertion, that

paragraph does not rely on any unproduced, privileged documents.

Second, the court **GRANTS IN PART** and **DENIES IN PART** Defendants'

motion for summary judgment.  The court **GRANTS** the motion for summary

judgment as to Count One (the claims of race discrimination under § 1981) because

Ms. Collins has either not presented evidence to establish a *prima facie* case of race

discrimination, or she has not rebutted Defendants' legitimate, non-discriminatory

reasons for the challenged employment actions.  The court **DENIES** the motion for

summary judgment as to Count Two (the claims of sex discrimination under Title

_____

[1] *See* Doc. 61 at 26 n.4; Tr. of Hearing held on September 11, 2019.

VII) because Ms. Collins has presented evidence from which a reasonable jury could find that Koch Foods discriminated against her based on her sex. The court **GRANTS** the motion for summary judgment as to Count Four (intentional infliction of emotional distress) because Ms. Collins' only evidence of outrage relates to a theory that she did not assert in her amended complaint, and because Count Four fails, the court also **GRANTS** the motion for summary judgment as to Count Five (negligence and wantonness).

## I. BACKGROUND

On a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

Koch Foods operates a chicken processing plant complex in Montgomery Alabama, consisting of a processing plant (also called the "kill plant") and a debone plant. (Doc. 48-1 at 6, 29; *see also* Doc. 51 at 5 ¶ 4; Doc. 61 at 3 ¶ 4). Until Koch Foods combined the two plants in 2017, each plant had its own Human Resources Manager and Plant Manager. (Doc. 48-3 at 37). During the events that are the subject of this lawsuit, Koch Foods was working on combining the two plants into one single campus. (Doc. 48-1 at 28; Doc. 48-3 at 6; Doc. 48-4 at 40).

The complex as a whole also had a Complex Human Resources Manager, who oversaw each plant's Human Resources Manager, and a Complex Manager, who oversaw all of the managers at the complex, including the Plant Managers and the Human Resources Managers. (*See* Doc. 48-3 at 60). The Complex Human Resources Manager position changed multiple times during the course of the events that are the subject of this lawsuit, but at all relevant times, Rod Thomas was the Complex Manager. (Doc. 48-1 at 16; Doc. 48-5 at 91).

In addition to the management of the complex, Koch Foods had a Corporate Human Resources Director who managed all of the Human Resources departments for all of Koch Foods' facilities, including the Montgomery complex. (Doc. 48-5 at 9, 19). Defendant Robert Elrod was the Corporate Human Resources Director. (*Id.* at 9, 19, 40).

Ms. Collins became a Human Resources Manager in January 2008, serving first at the kill plant, then at the debone plant, then back at the kill plant. (Doc. 48-1 at 6, 8, 15). When she became a Human Resources Manager, Koch Foods had an anti-fraternization policy prohibiting managers and supervisors from "engag[ing] in intimate relationships with anyone under their direct or indirect supervision." (Doc. 48-2 at 10). Employees were required to report any such relationship to their supervisor. (*Id.*).

In 2014, while serving as the Human Resources Manager for the kill plant, Ms. Collins began dating Johnny Gill, the Plant Manager for the kill plant. (Doc. 48-12 at 7, 9; Doc. 48-1 at 15, 22). Because neither Ms. Collins nor Mr. Gill supervised each other, their relationship was not a violation of that version of the anti-fraternization policy. (Doc. 48-3 at 20). Nevertheless, Ms. Collins disclosed the relationship to her supervisor, David Birchfield (a Caucasian man), who at that time was the Complex Human Resources Manager. (Doc. 48-1 at 22; *see* Doc. 48-16 at 3 ¶ 7).

In April and June 2016, two Koch Foods employees filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") based on alleged sexual harassment by Mr. Birchfield and Melissa McDickinson, who was a Human Resources Manager. (Doc. 59-15 at 21, 23). According to Koch Foods, an internal investigation revealed evidence that Mr. Birchfield and Ms. McDickinson were involved in an "intimate relationship." (*Id.* at 23). Koch Foods determined that Mr. Birchfield could no longer serve "as an effective manager," and allowed him to resign effective August 24, 2016. (*Id.*; Doc. 48-10 at 73; Doc. 48-16 at 3 ¶ 7).

Mr. Birchfield's resignation left the position of Complex Human Resources Manager open, and in August 2016, Ms. Collins applied for the position. (Doc. 48-1 at 24; Doc. 48-8 at 44). Koch Foods' manual on "Employee Hiring for Salaried

Employees" provides that it gives "first consideration" to current employees unless a Human Resources Manager decides to seek outside candidates:

> Current employees who want to transfer to or apply for an open position should be given first consideration. . . . If no internal candidates meet the job requirements, or if the Local Human Resources Manager determines that it is appropriate to do so, then the Local Human Resources Manager can seek outside candidates.

(Doc. 48-2 at 1, 4). Koch Foods solicited outside candidates to apply. (*See* Doc. 48-4 at 4, 11).

In September 2016, while Koch Foods was making its decision about who to hire, Mr. Thomas (the Complex Manager) and Mr. Elrod (the Corporate Human Resources Director) learned of Ms. Collins and Mr. Gill's relationship. (Doc. 48-3 at 19; Doc. 48-5 at 89; Doc. 48-12 at 16–17). They called Ms. Collins and Mr. Gill in for a meeting to ask them about their relationship. (Doc. 48-1 at 26–27; Doc. 48-3 at 25; Doc. 48-5 at 89). Mr. Elrod testified that, while they were waiting for Ms. Collins and Mr. Gill, Mr. Thomas asked him not to hire Ms. Collins for the Complex Human Resources Manager position because he (Mr. Thomas) did not trust Ms. Collins, given her relationship with Mr. Gill. (Doc. 48-5 at 89).

Ms. Collins and Mr. Gill admitted that they were living together and engaged to be married. (Doc. 48-1 at 27, 48; Doc. 48-3 at 25; Doc. 48-5 at 89). Mr. Elrod testified that, to avoid the conflict of interest that arose because of their relationship,

he transferred Ms. Collins to the debone plant so that she and Mr. Gill would not be working in the same plant.  (*Id.*; *see also* Doc. 48-1 at 28–29; Doc. 48-3 at 25).

Also in September 2016, Mr. Elrod began working on revising Koch Foods' anti-fraternization policy.  (Doc. 48-8 at 44–45; Doc. 48-16 at 3 ¶ 7).  He testified that he did so because of the issues with Mr. Birchfield (doc. 48-16 at 3–4 ¶ 7; doc. 48-8 at 68), and because he was "very unhappy about all of these issues coming up in human resources, and I was ready to get it stopped. . . .  [T]hey had gone on for some time with different people, and I was tired of it" (doc. 48-8 at 45).  He and an attorney worked on revising that policy through September 2016.  (*Id.* at 3–4 ¶¶ 7–8).

While Ms. Collins was working at the debone plant, Koch Foods released its revised anti-fraternization policy.  (*See* Doc. 48-1 at 40).  The new anti-fraternization policy provides that "[n]o person in a management or supervisory position shall have a romantic or dating relationship with an employee whom he or she directly supervises or whose terms or conditions of employment he or she may influence." (Doc. 48-2 at 25).  It also specifically "prohibits employees who work in the human resources department from dating or having any type of romantic or sexual relationship with any other employee who works at the same facility or complex regardless of whether or not the human resources employee has direct managerial or supervisory authority over the employee."  (*Id.* at 26).  The policy states that "one

of the individuals involved in the relationship may be subject to transfer or termination of employment." (*Id.* at 25). Ms. Collins and Mr. Gill's relationship was a clear violation of the revised anti-fraternization policy. Mr. Elrod testified that after finalizing the revised anti-fraternization policy, he asked Ms. Collins to sign it and to distribute it among Koch Foods' other employees, but she did not complete either task. (Doc. 48-8 at 5).

Around the same time, Koch Foods hired Michael Carow, a Caucasian man, to be the Complex Human Resources Manager. (Doc. 48-4 at 3). Ms. Collins and Mr. Gill continued their relationship, each working in a different plant.

Mr. Carow resigned as the Complex Human Resources Manager eight months later. (Doc. 48-8 at 59–60; Doc. 48-10 at 9). He later took on the newly-created position of Human Resources Director. (Doc. 48-4 at 24). Ms. Collins applied to replace Mr. Carow as the Complex Human Resources Manager. (Doc. 48-8 at 59). Mr. Carow, tasked with finding his own replacement for the Complex Human Resources Manager position, testified that he received Ms. Collins' application but he did not interview her. (Doc. 48-4 at 35–36). He testified that he did not make a hiring decision until later, but he knew when he received her application that she was involved with Mr. Gill and would not be qualified for the position. (*Id.*).

On July 3, 2017, Mr. Gill was promoted to become the Plant Manager of both plants[2] (doc. 48-4 at 61–62; doc. 48-9 at 14), although the plants were not officially combined until October or November 2017 (doc. 48-9 at 13).

On July 15, 2017, Ms. Collins married Mr. Gill. (Doc. 48-1 at 48). Ten days later, Mr. Carow called Ms. Collins in to meet with him and Mr. Elrod. (Doc. 48-1 at 49). During that meeting, Ms. Collins confirmed that she had married Mr. Gill. (Doc. 48-4 at 62). Mr. Carow and Mr. Elrod asked Ms. Collins to step out of the room for a few minutes, during which time they decided to terminate her employment. (*Id.* at 62–63). Her termination was effective that day. (*See* Doc. 48-8 at 46–47).

Mr. Carow testified that Koch Foods had to terminate Ms. Collins and keep Mr. Gill because his "position was a very high level position that we needed." (Doc. 48-4 at 43; *see also id.* at 66). Mr. Thomas testified that Mr. Gill was given a raise because he "had more value . . . to our company than Ms. Collins." (Doc. 48-3 at 39; *see also id.* at 42). Mr. Elrod testified that he decided to terminate Ms. Collins because he did not believe she could be unbiased if an employee came to her with a complaint about Mr. Gill. (Doc. 48-6 at 23). He further testified that he held human resources employees "to a higher standard," so Ms. Collins needed to be disciplined

---

[2] Mr. Gill testified that he was not informed of the promotion in July. (Doc. 48-12 at 50).

for violating the anti-fraternization policy, but he could not discipline Mr. Gill because Mr. Gill did not report to him. (Doc. 48-8 at 5).

After Ms. Collins was fired, Koch Foods hired Darren Ware, an African-American man, to be the Complex Human Resources Manager. (Doc. 48-1 at 64; Doc. 48-8 at 42). It also hired Linda Wright, an African-American woman, to replace Ms. Collins. (Doc. 48-8 at 7, 9).

## II.    DISCUSSION

### 1.  Motion to Strike

To understand Ms. Collins' motion to strike, the court must briefly address a motion for *in camera* review that she filed earlier in this case. During discovery, Defendants produced a privilege log claiming that they did not have to produce some emails and documents because that evidence was protected by the attorney-client privilege or by the work product doctrine. (Doc. 42 at 2). Of relevance to the motion to strike, six of the emails identified on the privilege log were between Mr. Elrod and an attorney about the anti-fraternization policy. (*See id.* at 5, 15). The subject lines of those emails were all either "Policy" or "Anti-Fraternization Policy." (*Id.* at 15). After a status conference, the court denied Ms. Collins' motion for *in camera* review. (Doc. 46).

In Defendants' brief in support of summary judgment, they state: "Elrod continued working with legal counsel on the revision to the anti-fraternization

policy, and rolled out the revised policy on October 10, 2015."[3]  (Doc. 51 at 9 ¶ 31). In support of that statement, they cite Mr. Elrod's deposition, during which he testified that he and the attorney were working on a revised anti-fraternization policy. (Doc. 48-8 at 45).  Defendants also cite a declaration submitted by Mr. Elrod, in which he attests that the emails exchanged were about revising the anti-fraternization policy.  (Doc. 48-16 at 3–4 ¶¶ 7–8).

Ms. Collins now requests that the court strike paragraph 31, arguing that Defendants may not rely on privileged documents that it refused to produce to Ms. Collins.  (Doc. 61 at 6–7 ¶ 31).  The court **DENIES** the motion to strike. Defendants have not relied on any privileged documents; paragraph 31 does not reveal the content of the emails except for what had already been revealed on the privilege log, which was that they related to the anti-fraternization policy.

## 2. Motion for Summary Judgment

Before addressing the arguments made in Defendants' motion to dismiss, the court must briefly address the scope of Ms. Collins' amended complaint.  Putting aside the claims that she has expressly conceded, the amended complaint asserts the following claims: (1) race discrimination, in violation of 42 U.S.C. § 1981; (2) sex discrimination, in violation of Title VII; (3) intentional infliction of emotional

---

[3] The year stated in that paragraph is a typo; the parties agree, and the evidence shows, that the new anti-fraternization policy went into effect on October 10, 2016.  (*See* Doc. 48-2 at 25).

distress; and (4) negligent and wanton hiring, training, supervision, and retention. (Doc. 10 at 4–16, 18–22).

In her response to the motion for summary judgment, Ms. Collins asserts that her race discrimination claims arise under both § 1981 and Title VII. (Doc. 61 at 32 n.12). However, her amended complaint expressly identifies § 1981 as the statutory basis for her race discrimination claims, and Title VII as the statutory basis for her sex discrimination claims. (*See* Doc. 10 at 4–16). At no point does the amended complaint invoke Title VII as the basis for any of her race discrimination claims, nor has Ms. Collins sought to amend her complaint to assert Title VII as the basis for her race discrimination claims. "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *see also Chavis v. Clayton Cty. Sch. Dist.*, 300 F.3d 1288, 1291 n.4 (11th Cir. 2002). Ms. Collins may not pursue a claim for Title VII race discrimination at this point, and this court's memorandum opinion will address her § 1981 race discrimination claim separately from her Title VII sex discrimination claims.

Next, the court will set out the legal framework under which it will analyze her claims. Title VII prohibits an employer from discriminating against a person based, among other things, sex. 42 U.S.C. § 2000e-2(a)(1). Section 1981 prohibits intentional discrimination "in private employment on the basis of race." *Johnson v.*

*Ry. Express Agency*, 421 U.S. 454, 4659–60 (1975). As a general rule, claims brought under Title VII and § 1981 "are subject to the same standards of proof and employ the same analytical framework." *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). For example, both Title VII and § 1981 claims can be proved by presenting "three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence or statistical evidence." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Ms. Collins has not offered any direct or statistical evidence of discriminatory intent, so the only issue in this case is whether she has presented sufficient circumstantial evidence for a reasonable jury to find intentional discrimination based on either her race or her sex.

"A plaintiff may raise a reasonable inference of the employer's discriminatory intent through various forms of circumstantial evidence." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Ms. Collins relies on two forms of circumstantial evidence: the test set out in the Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and the so-called "mixed motive" test discussed in the Eleventh Circuit's decision in *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227 (11th Cir. 2016). (*See* Doc. 61 at 27–38). In doing so, however, she does not differentiate between her § 1981 race discrimination claims and her Title VII sex discrimination claims. (*See, e.g., id.* at 32–33 (adopting and incorporating the mixed-motive argument made about her sex discrimination claim

in the part of her brief addressing a race discrimination claim)). But, as the court will explain, Ms. Collins cannot rely on a mixed-motive theory to prevail on her § 1981 race discrimination claims.

Title VII expressly permits a plaintiff to establish liability by "demonstrat[ing] that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m); *see also Quigg*, 814 F.3d at 1239–40. But "the mixed-motive amendments [to Title VII] do not apply to § 1981 claims." *Mabra v. United Food & Commercial Workers Local Union No. 1996*, 176 F.3d 1357, 1357 (11th Cir. 1999).[4] Thus, for Ms. Collins' § 1981 race discrimination claims, she must present evidence of the existence of both a discriminatory motive *and* that "a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation [for the employment action] is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *see Mabra*, 176 F.3d at 1357. In other words, she must satisfy her burden under the *McDonnell Douglas* test.

Under the *McDonnell Douglas* test, a plaintiff must first make out a *prima facie* case of discrimination by presenting evidence that "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her

---

[4] To the extent the Eleventh Circuit's 2016 decision in *Quigg* conflicts with its 1999 decision in *Mabra*, this court is bound to follow the earlier decision. *See Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000).

employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." *Burke-Fowler v. Orange Cty.*, 447 F.3d 1319, 1323 (11th Cir. 2006). The parties do not contest that Ms. Collins is part of a protected class or that she was subjected to an adverse employment action, but they do contest the other elements of the *prima facie* case.

If the plaintiff can establish a *prima facie* case of discrimination, the burden shifts to the defendant to present evidence showing a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802; *Burdine*, 450 U.S. at 253. If the defendant can satisfy that burden, the plaintiff must present evidence from which a reasonable jury could find that the proffered reasons were pretextual. *Smith*, 644 F.3d at 1326.

1. § 1981 Race Discrimination Claims

In her amended complaint, Ms. Collins asserts claims for race discrimination under § 1981, arising from three adverse employment actions: (1) the 2016 failure to promote her; (2) the 2017 failure to promote her; and (3) her termination. (*See* Doc. 10 at 6–7 ¶¶ 29–39, 9 ¶¶ 55–59, 10 ¶¶ 63–67, 12 ¶¶ 76–77; *see also* Tr. of 9/11/2019 Motion Hearing).

### a. The 2016 Failure to Promote

Defendants contend that Ms. Collins has not established a *prima facie* case of discrimination for the 2016 failure to promote her because Mr. Carow, whom they hired, was more qualified than Ms. Collins. (Doc. 51 at 21–23). Even accepting Defendants' contention that Mr. Carow was more qualified than Ms. Collins, his qualifications do not affect whether she can make out a *prima facie* case of race discrimination. When addressing the *prima facie* case, all the plaintiff needs to show is that she was qualified for the job, not that she was more qualified than whomever the defendant selected. *See Burke-Fowler*, 447 F.3d at 1323; *Walker v. Mortham*, 158 F.3d 1177, 1185 (11th Cir. 1998) (holding that the court could not consider "relative qualification at the prima facie stage of the *McDonnell Douglas* framework"). Because Defendants made no other argument about Ms. Collins' ability to establish a *prima facie* case of race discrimination with respect to the 2016 failure to promote her, the court finds that Ms. Collins has presented sufficient evidence on that point.

Defendants next contend that even if Ms. Collins has established a *prima facie* case, they have proffered legitimate, non-discriminatory reasons for the failure to promote her because Mr. Carow was more qualified than her, Mr. Thomas had concerns about Ms. Collins' failure to fairly and consistently apply the attendance policy to all employees, Ms. Collins could not serve as Complex Human Resources

Manager while Mr. Gill served as Plant Manager, and Mr. Elrod had lost trust in Ms. Collins due to her relationship with Mr. Gill. (*Id.* at 23–27). To survive summary judgment, Ms. Collins must rebut every proffered reason with evidence from which a jury could find that the reason was pretextual. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1037 (11th Cir. 2000).

First, Defendants again contend that Mr. Carow was more qualified than her. (Doc. 51 at 23–24). Here, the relative qualifications of the plaintiff and the candidate ultimately selected is relevant because a defendant's assertion (supported by evidence) that it hired a more qualified candidate is a legitimate, non-discriminatory reason for an employment decision. *See Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001); *see also Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253–54 (11th Cir. 2000).

Ms. Collins argues that Defendants cannot proffer Mr. Carow's comparative qualifications as a reason for their decision because they made the decision to reject her before knowing of Mr. Carow's qualifications, but she has not supported that assertion with a citation to the record evidence (*see* doc. 61 at 37), and the court's independent search of the record has not revealed on what date Defendants decided to reject Ms. Collins or on what date they became aware of Mr. Carow's qualifications. She therefore has not met her burden under Federal Rule of Civil

Procedure 56 to support her factual allegation.[5]  *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . .").

Next, Ms. Collins asserts that Defendants cannot rely on the defense that Mr. Carow was more qualified.  (Doc. 61 at 38).  The case that she cites in support of that proposition does, indeed, say that "[a] mere statement that the employer hired the best qualified person leaves no opportunity for the employee to rebut the given reason as a pretext." *Increase Minority Participation by Affirmative Change Today of Nw. Fla., Inc. (IMPACT) v. Firestone*, 893 F.2d 1189, 1194 (11th Cir. 1990).  In that case, however, the defendants had not presented any evidence to support that statement, but instead had relied on their "mere statement" that they hired a more qualified candidate. *See id.* at 1193–94.  That is not the case here, where Defendants have submitted Mr. Carow's qualifications in support of their statement that he was more qualified than her.  (*See* Doc. 48-4 at 69).  They have satisfied their burden to put forth a legitimate, non-discriminatory reason for their decision, and the burden shifts to Ms. Collins to rebut that reason.

---

[5] Even if Ms. Collins had supported her factual allegation that Defendants rejected her application before seeing Mr. Carow's qualifications, she has not presented any evidence from which a reasonable jury could find that Defendants' proffered reason was pretext for *race* discrimination. *See Lee*, 226 F.3d at 1253 ("A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by [her membership in a protected class].").

To establish pretext for a hiring decision based on relative qualifications, the plaintiff must submit evidence "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Lee*, 226 F.3d at 1254 (quotation marks omitted). Although Ms. Collins has presented evidence that she was qualified for the job, her evidence is not of that weight or significance. A reasonable person could have chosen Mr. Carow for the position, and as a result, Ms. Collins has not presented evidence of pretext sufficient to survive summary judgment with respect to this proffered reason.

Because Ms. Collins needed to rebut every proffered reason for Defendants' decision not to promote her, the court need not address Defendants' other proffered reasons or Ms. Collins' arguments about why those reasons are pretextual. Accordingly, the court **GRANTS** Defendants' motion for summary judgment on the § 1981 race discrimination claim arising from the 2016 failure to promote her.

### b. The 2017 Failure to Promote

Defendants contend that Ms. Collins cannot establish a *prima facie* case of race discrimination based on the 2017 failure to promote her because they hired an African-American man. (Doc. 51 at 33.)

As discussed above, to establish a *prima facie* case of race discrimination for a failure to promote, Ms. Collins has to present evidence that, among other things,

Defendants "treated similarly situated employees *outside of her protected class* more favorably than she was treated." *Burke-Fowler*, 447 F.3d at 1323 (emphasis added). In this case, because Ms. Collins' claim is of race-based discrimination, she must show that Defendants treated similarly situated employees who were not African-American less favorably. She has not done so. Although Ms. Collins briefly states that Defendants hired a white man for the position (*see* doc. 61 at 37), the evidence shows that the candidate they selected, Mr. Ware, is an African-American man. (Doc. 48-1 at 64; *see also* Doc. 48-4 at 18). Accordingly, Ms. Collins has not met her burden of presenting evidence establishing a *prima facie* case of racial discrimination for the 2017 failure to promote her, and the court **GRANTS** Defendants' motion for summary judgment as to that claim.

     *c. The Termination*

Among other arguments, Defendants contend that Ms. Collins cannot establish a *prima facie* case of race discrimination based on her termination because they hired an African-American woman to replace her. (Doc. 51 at 28 n.4). Ms. Collins does not respond to this assertion. (*See* Doc. 61 at 32–34). But the record confirms that after terminating Ms. Collins, Koch Foods hired Linda Wright, who is also an African-American woman. (Doc. 48-8 at 7, 9). Accordingly, Ms. Collins' race-based discrimination claim fails at the *prima facie* stage because she has not presented any evidence that Defendants "treated similarly situated

employees outside of her protected class more favorably than she was treated." *Burke-Fowler*, 447 F.3d at 1323. The court **GRANTS** Defendants' motion for summary judgment on Ms. Collins' § 1981 claim of race-based discrimination based on her termination.

### 3. Title VII Sex Discrimination Claims

In Count Two, Ms. Collins asserts claims of sex discrimination, under Title VII, based on two of the three employment actions as her race discrimination claims: (1) the 2017 failure to promote her; and (2) her termination.[6] (Doc. 10 at 14 ¶¶ 91, 92).

#### a. *The 2017 Failure to Promote*

Defendants seek summary judgment on this claim on the basis that Mr. Carow, not Mr. Elrod, made the decision to hire Mr. Ware, and there is no evidence that Mr. Carow himself had any discriminatory motivation. (Doc. 63 at 19). They also emphasize that Mr. Ware was more qualified than Ms. Collins for the position. (*Id.*).

In response, Ms. Collins asserts that, under either the *McDonnell Douglas* test or a mixed-motive theory of the case, she has presented sufficient evidence to raise

---

[6] Defendants make arguments about a sex discrimination claim based on the failure to transfer Ms. Collins to a corporate trainer position. (Doc. 51 at 35–36). In her amended complaint, Ms. Collins did not assert a claim based on that employment action, and in her response brief, she does not argue that the failure to transfer her constitutes sex discrimination. (*See* Doc. 61). Instead, she argues that the failure to transfer her to that position is evidence of the discriminatory animus motivating her termination. (*See id.* at 31–32).

a reasonable inference that sex discrimination was a motivation behind the 2017 failure to promote her.  (Doc. 61 at 35–38).  The court agrees.

Under the *McDonnell Douglas* framework, Ms. Collins has made out a *prima facie* case of sex discrimination because she has presented evidence creating a genuine dispute of material fact about whether Koch Foods treated similarly situated employees outside her protected class more favorably and whether she was qualified for the promotion.  *See Burke-Fowler*, 447 F.3d at 1323; *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004).  At the next step of the framework, Defendants have proffered legitimate, non-discriminatory reasons for their failure to promote her: they assert that Mr. Ware was more qualified than Ms. Collins and that Ms. Collins' relationship with Mr. Gill created a conflict of interest barring her from that promotion.  (Doc. 51 at 33–34).  But, given Mr. Carow's testimony about when and why he decided not to interview Ms. Collins, and given the difference in the way that Ms. Collins and Mr. Gill were treated based on the same violation of the same policy, the court finds that a reasonable jury could find those reasons to be pretext for sex discrimination.

For the same reason, a reasonable jury could find that under the mixed motive test, Ms. Collins' sex was at least one motivating reason behind the 2017 failure to promote her.  *See Quigg*, 814 F.3d at 1239 (holding that to survive summary judgment on a mixed-motive claim, the plaintiff must offer "evidence sufficient to

convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) a protected characteristic was *a* motivating factor for the defendant's adverse employment action") (alteration omitted) (emphasis in original). Accordingly, the court **DENIES** Defendants' motion for summary judgment on Ms. Collins' claim of sex discrimination arising from the 2017 failure to promote her.

### i. The Termination

Ms. Collins asserts that she has presented evidence that at least one motivating factor for her termination was gender because (1) Defendants treated Mr. Birchfield and Mr. Gill differently from how they treated her based on the same conduct; and (2) Defendants deviated from their policy requiring progressive discipline by firing her immediately.[7] (Doc. 61 at 26–32). Defendants respond that, under the Eleventh Circuit's en banc opinion in *Lewis v. City of Union City, Ga.*, 918 F.3d 1213 (11th Cir. 2019) (en banc), neither Mr. Gill nor Mr. Birchfield qualify as a comparator because they are not similarly situated to Ms. Collins in all material respects. (Doc. 63 at 11–16). They also dispute Ms. Collins' assertion that they deviated from their progressive discipline policy. (*Id.* at 16–17).

---

[7] Ms. Collins does not respond to Defendants' argument that the sex discrimination claim arising from her termination cannot survive summary judgment under the *McDonnell Douglas* test. (*See* Doc. 51 at 27–32). The court concludes that she has abandoned any reliance on a *McDonnell Douglas* theory with respect to the Title VII sex discrimination claim arising from her termination.

Again, and for the same reasons given with respect to the 2017 failure-to-promote claim, the court finds that, taking the facts in the light most favorable to Ms. Collins and making all inferences in her favor, a reasonable jury could find that her sex was *a* motivating factor behind her termination. Accordingly, the court **DENIES** Defendants' motion for summary judgment on Ms. Collins' Title VII sex discrimination claim arising from her termination.

4.  Intentional Infliction of Emotional Distress

In Ms. Collins' amended complaint, she asserts a claim for intentional infliction of emotional distress (also commonly referred to as outrage) based on Defendants' "severe, degrading, and humiliating discrimination and harassment" and alleged denial of her claim for unemployment benefits. (Doc. 10 at 18–19 ¶¶ 117–20). In response to Defendants' arguments in favor of summary judgment on this claim (doc. 51 at 41), Ms. Collins argues only that a reasonable jury could find that Defendants fired her to punish her for marrying Mr. Gill, which she says would constitute outrage under Alabama law (doc. 61 at 38–41).

"To be actionable under the tort of outrage, the conduct involved must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and . . . be regarded as atrocious and utterly intolerable in a civilized society." *McIsaac v. WZEW-FM Corp.*, 495 So. 2d 649, 651 (Ala. 1986) (quotation marks omitted) (alteration in original). "The principle applies only to unprivileged,

intentional or reckless conduct of an extreme and outrageous nature, and only that which causes severe emotional distress." *Am. Rd. Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980).

Ms. Collins' amended complaint did not allege any facts to put either Defendants or the court on notice that she was asserting a claim of outrage based on Defendants' alleged termination of her employment for getting married. As discussed above, a party cannot amend a pleading "through argument in a brief opposing summary judgment." *Gilmour*, 382 F.3d at 1315. Ms. Collins cannot change the factual basis for her outrage claim at this late stage.

But even if Ms. Collins had properly asserted that factual basis for her claim in her amended complaint, she has not presented evidence from which a reasonable jury could find Defendants liable for outrage. The case on which she relies, *Cunningham v. Dabbs*, 703 So. 2d 979 (Ala Civ. App. 1997), is distinguishable. In *Cunningham*, the defendant, over the course of two years, repeatedly touched the plaintiff, "made lewd and suggestive comments to her," "stuck his tongue in her ear," threatened to fire her if she got married, and then did in fact fire her when she announced her plans to marry. *Id.* at 980–81. The Alabama Court of Civil Appeals relied not only on the fact that the defendant had violated the plaintiff's "fundamental right to marry," but also that she had presented evidence of "a pattern of harassment"

that lasted months.  *Id.* at 983.  The facts underlying this case do not rise to the same level as those present in *Cunningham*.

As for the factual bases that Ms. Collins did assert in her amended complaint, she has not presented any evidence that Defendants denied her claim for unemployment benefits, and although she has presented evidence creating a triable issue on her Title VII sex discrimination claim, that alone is not so "extreme and outrageous" that it would support a claim of outrage under Alabama law.  *See Inmon*, 394 So. 2d at 365.  Accordingly, the court **GRANTS** Defendants' motion for summary judgment on Count Four, Ms. Collin's claim of intentional infliction of emotional distress.

5.  Negligent and Wanton Hiring, Supervision, Training, or Retention

Ms. Collins asserts in Count Five that Koch Foods is liable for negligent and wanton hiring, training, supervision and retention.  (Doc. 10 at 19–22).  At the motion hearing held on September 11, 2019, she conceded that this claim "rises and falls" with Count Four.  Therefore, because the court has determined that summary judgment in favor of Defendants is appropriate for Count Four, the court **GRANTS** Defendants' motion for summary judgment as to Count Five.

## III.  CONCLUSION

The court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment.  The court **WILL ENTER SUMMARY JUDGMENT** in

favor of Defendants and against Ms. Collins on Counts One, Four, and Five. The court **DENIES** the motion for summary judgment on Count Two with respect to Ms. Collins' 2017 failure-to-promote claim and her termination claim. Based on Ms. Collins' express concession, the court **DISMISSES** all other claims.

Because this order resolves all claims against Mr. Elrod, the court **DIRECTS** the Clerk to term Mr. Elrod as a defendant. The case will proceed to trial on Count Two.

The court will enter a separate partial judgment consistent with this opinion.

**DONE** and **ORDERED** this September 23, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE