# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SHAWNETTA COLLINS, | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| v. | ] | **2:18-cv-00211-ACA** |
| | ] | |
| KOCH FOODS INC., et al., | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendants Koch Foods, Inc. and Koch Foods of Alabama, LLC's (collectively, "Koch Foods") renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) or, in the alternative, remittitur under Federal Rule of Civil Procedure 59. (Doc. 130).

Koch Foods ran two chicken processing and packaging plants in Montgomery, Alabama. Plaintiff Shawnetta Collins worked as the Human Resources Manager for one of the plants, where she became romantically involved with the Plant Manager, Johnny Gill. After her supervisors became aware of the relationship, she was transferred to the other plant to avoid the conflict of interest created by the relationship. At the same time, Koch Foods amended its anti-fraternization policy to prohibit any human resources employee from engaging in an intimate relationship with any Koch Foods employee working in the same complex of plants.

Several months later, Koch Foods began the process of combining its two Montgomery plants into a single campus. Aware of the relationship between Ms. Collins and Mr. Gill, Koch Foods nevertheless decided to promote Mr. Gill so that he managed not only his plant, but also the plant to which Ms. Collins had been transferred. Unaware of the promotion planned for Mr. Gill, Ms. Collins applied to be the Complex Human Resources Manager. While Ms. Collins' application was pending, Koch Foods formalized Mr. Gill's promotion, although it did not inform him that he had been promoted. Ms. Collins and Mr. Gill married a few weeks later.

Ms. Collins did not get the promotion she had applied for, and ten days after her marriage, Koch Foods terminated her based on her violation of the anti-fraternization policy. She filed this lawsuit, asserting, among other claims, that Koch Foods' failure to promote her and termination of her employment was sex discrimination, in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. (Doc. 10 at 13–16). A jury found that Ms. Collins' sex was the only motivating factor behind Koch Foods' failure to promote her, but that her termination was not discriminatory. (Doc. 113). It awarded $262,000 in back pay, but no other damages. (*Id.*).

Koch Foods now moves for judgment as a matter of law or, in the alternative, remittitur. Because the court concludes that a reasonable jury could have found that Ms. Collins' sex was a motivating factor behind the failure to promote her and Koch

Foods' same-decision defense is a limitation on damages instead of an avoidance of liability, the court **DENIES** the renewed motion for judgment as a matter of law. The court **GRANTS IN PART** and **DENIES IN PART** the motion for remittitur. Because the $262,000 back pay award exceeds the amount the jury could award, the court **GRANTS** the motion for remittitur. However, to the extent Koch Foods argues that the award is limited to $6,000, the court **DENIES** the motion because a jury could have found that Koch Foods owes $10,853.84 in back pay, not including prejudgment interest.

Finally, the court **ORDERS** the parties to file, in writing, **on or before April 20, 2020**, a joint statement indicating what prejudgment interest would be as of that date, based on a back pay award of $10,853.84.

## I. BACKGROUND

In reviewing a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50, the court draws all reasonable inferences in favor of the non-moving party, does not weigh the evidence or make any credibility determinations, and disregards any "evidence that the jury need not have believed." *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 948 (11th Cir. 2018); *see also Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000) ("[T]he court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that

that evidence comes from disinterested witnesses.") (citation and quotation marks omitted).

Koch Foods operates a chicken processing plant complex in Montgomery Alabama, consisting of a processing plant (also called the "kill plant") and a debone plant. (Doc. 131 at 76, 483–84, 487). Until late 2017, the plants were located a few miles apart and each had its own Human Resources Manager and Plant Manager. (Doc. 131 at 79–80, 408–10, 419–20, 434). Although the plants were undisputedly part of the same complex, they did not have a unified reporting structure. The kill plant's Plant Manager reported to a Complex Plant Manager named Rod Thomas, while the debone plant's Plant Manager reported to a corporate vice president. (*Id.* at 79–80, 419–20). The Human Resources Managers for the plants reported to a Complex Human Resources Manager, who in turn reported to the corporate Human Resources Director, Robert Elrod. (*Id.* at 131 at 79, 294, 419, 479, 481; Doc. 127-12 at 1).

As of 2017, Ms. Collins had worked at Koch Foods and its predecessor for 26 years. (Doc. 131 at 172). She had been working in the human resources department for 16 years, first as a payroll assistant, then as a human resources supervisor, then as a Human Resources Manager. (*Id.* at 175, 177). She had worked at both plants in her capacity as Human Resources Manager and had, while working for Koch

Foods, obtained a master's degree in human resources management. (*Id.* at 176–79).

In 2016, Ms. Collins was the Human Resources Manager for the kill plant, where Johnny Gill served as the Plant Manager. (Doc. 131 at 419). She had started dating Mr. Gill several years before, and they became engaged in 2016. (*Id.* at 191). She disclosed the relationship to her immediate supervisor, then-Complex Human Resources Manager David Birchfield,[1] as required under the anti-fraternization policy then in effect.[2] (*Id.* at 167, 200–01, 204–05, 422; *see also* Doc. 127-1).

Mr. Birchfield left Koch Foods in August 2016, and Ms. Collins applied to replace him as the Complex Human Resources Manager. (Doc. 131 at 113, 173). While the position was still open, Human Resources Director Mr. Elrod and Complex Plant Manager Mr. Thomas learned information that led them to believe that Ms. Collins and Mr. Gill were involved, and called them in for a meeting. (*Id.* at 606–07). At the meeting, Ms. Collins and Mr. Gill confirmed that they were in a

---

[1] Mr. Birchfield testified that he did not recall Ms. Collins disclosing the relationship (doc. 131 at 155), but where their testimony conflicts, the court must accept Ms. Collins' version, *see Chmielewski*, 890 F.3d at 948.

[2] There was conflicting testimony about whether Ms. Collins and Mr. Gill's relationship violated the version of the anti-fraternization policy in effect in September 2016. (*See* Doc. 131 at 424–25, 511–12). The conflicting evidence does not affect the outcome of this motion for judgment as a matter of law because, as the court will explain below, the anti-fraternization policy was revised in October 2016 and Koch Foods does not argue that a violation of the earlier version was its reason for declining to promote Ms. Collins in 2017. Moreover, both Mr. Thomas and Mr. Elrod testified that Mr. Gill was in violation of the earlier version of the policy (doc. 131 at 424, 514), and the revisions to the policy did not affect the provisions that would have applied to him, so he would still have been in violation of the revised policy.

relationship and informed Mr. Elrod and Mr. Thomas they were engaged to be married. (*Id.* at 198–99).

Ms. Collins did not get the promotion she sought in August 2016. Instead, Mr. Elrod transferred Ms. Collins to be the Human Resources Manager at the debone plant, which operated under an entirely separate management chain. (Doc. 131 at 293–94, 420, 532). Mr. Elrod testified that he did not interview her for the promotion because he "had a problem with distrust and a lot of issues in her past that [he] wasn't—didn't feel real comfortable with." (*Id.* at 521). However, the only issue that he articulated was the conflict of interest created by her relationship with Mr. Gill.[3] (*Id.* at 528–29). Mr. Elrod also testified that he transferred Ms. Collins from the kill plant to the debone plant because of that conflict of interest. (*Id.* at 532–33).

Meanwhile, after consulting with Mr. Thomas (doc. 131 at 450), Mr. Elrod hired Michael Carow to fill the open Complex Human Resources Manager position (*id.* at 524). Mr. Elrod also revised the anti-fraternization policy. (*Id.* at 540–41; Doc. 127-2). The revised anti-fraternization policy "expressly prohibit[ed] employees who work in the human resources department from dating or having any

---

[3] Mr. Thomas also testified that he told Mr. Elrod he was concerned about promoting Ms. Collins because he did not believe she was correctly administering an attendance policy. (Doc. 131 at 454–55). Mr. Thomas later conceded that Ms. Collins explained the attendance policy to him, after which he "had no reason to believe" that she was administering the policy incorrectly. (*Id.* at 469, 479).

type of romantic or sexual relationship with any other employee who works at the same facility or complex regardless of whether or not the human resources employee has direct managerial or supervisory authority over the employee." (Doc. 127-2 at 2). Mr. Elrod testified that the kill and debone plants were part of the same complex, so that Ms. Collins' transfer to the debone plant did not cure the violation of the policy.[4] (Doc. 131 at 546–47). Nevertheless, he testified that the move to the debone plant allowed Ms. Collins to continue working for Koch Foods while maintaining her relationship with Mr. Gill. (*Id.* at 532, 564).

In April 2017, Mr. Thomas, Mr. Elrod, and another Koch Foods manager decided to promote Mr. Gill so that he oversaw both of the Montgomery plants. (Doc. 131 at 430–32, 434). They made this decision because Koch Foods was merging the two plants onto a single campus. (*Id.* at 699). Mr. Thomas testified that the promotion created a conflict of interest given Ms. Collins' position as Human Resources Manager of the debone plant. (*Id.* at 431). But, in his opinion, creating that conflict of interest was not a reason to deny Mr. Gill the promotion because of Mr. Gill's importance to Koch Foods: "[H]e's been with the organization at the time for nine years, has a great relationship with people, good continuity, understands our

---

[4] In contrast, Mr. Thomas testified that, despite the plain language of the anti-fraternization policy, transferring Ms. Collins to the debone plant "fixe[d] any potential conflict of interest." (Doc. 131 at 431).

customer base, understands our USDA. So very knowledgeable of the day-to-day operations in the facility and does a good job." (*Id.* at 431, 453).

In June 2017, Mr. Carow (the Complex Human Resources Manager) decided to resign from Koch Foods, effective June 16, 2017. (Doc. 131 at 230–31; Doc. 127-20). In an effort to keep Mr. Carow, Koch Foods approved a position that it had been working on creating for several years. It established the position of Human Resources Director and placed Mr. Carow in it. (Doc. 131 at 554–55, 650–51). The promotion for Mr. Carow left the Complex Human Resources Manager position still open.

On June 15, 2017, Ms. Collins emailed Mr. Elrod asking to meet with him about the Complex Human Resources Manager position. (Doc. 131 at 230–31; Doc. 128-6). She met with him on June 22 and expressed her interest in the promotion to Complex Human Resources Manager. (*See* doc. 131 at 232–34; Doc. 128-7). According to Ms. Collins, Mr. Elrod did not say anything to her about the anti-fraternization policy or a conflict of interest, nor did he tell her that she was unqualified for the position. (*Id.* at 233).

On June 19, 2017, Mr. Carow and Mr. Thomas finalized the promotion for Mr. Gill, to be effective on July 3, 2017. (Doc. 131 at 749; Doc. 128-8). Mr. Gill testified that no one ever told him he had been promoted and he did not learn of the promotion until well after it had occurred. (Doc. 131 at 796–97).

On June 23, 2017, Mr. Carow emailed Ms. Collins and another female employee, the Human Resources Manager at the kill plant, Tammi Bonds, stating: "Please email your current resume . . . to be considered for Complex HR Manager role if you are interested," with a deadline in early July. (Doc. 131 at 658; Doc. 128-7 at 1). On June 27, before receiving Ms. Collins' application, a recruiter sent Mr. Carow a resume from a male applicant named Darren Ware.[5] (Doc. 131 at 705–06). Ms. Collins submitted her application the next day, June 28. (Doc. 131 at 235; Doc. 128-7 at 2).

Mr. Carow and Mr. Elrod reviewed the resumes submitted but did not elect to interview Ms. Collins.[6] (Doc. 131 at 654). Mr. Carow explained that Ms. Collins' relationship with Mr. Gill was "part of the reason" he declined to interview her (*id.*

---

[5] Although Mr. Carow testified that he received Mr. Ware's and Ms. Collins' applications on June 27, instead of a day apart, the email that Ms. Collins sent to Mr. Carow with her letter of interest and resume was sent on June 28. (*Compare* Doc. 131 at 706 *with* Doc. 128-7 at 2).

[6] The parties dispute who made the initial selection of candidates to interview for the Complex Human Resources Manager. Koch Foods asserts that the evidence shows that Mr. Elrod gave Mr. Carow the sole responsibility for selecting from among the applicants a single candidate whom Mr. Elrod would interview. (Doc. 13). Mr. Elrod did, indeed, testify that he "wasn't involved in the process" of selecting the final candidate for the Complex Human Resources Manager position; he delegated that responsibility to Mr. Carow. (Doc. 131 at 565, 580). And Mr. Carow testified that he was in charge of conducting the interviews to fill the position. (*Id.* at 653).

However, the Complex Plant Manger, Mr. Thomas, testified that in 2017, Mr. Elrod sent him some resumes of applicants for the Complex Human Resources Manager position and asked for his opinion on whom to interview. (Doc. 131 at 452). Based on Mr. Thomas's testimony, a reasonable factfinder could conclude that Mr. Elrod was, in fact, involved in reviewing resumes and selecting applicants to interview for the position, even though he did not conduct any of the initial interviews himself. Accordingly, the court must proceed based on that inference. *See Chmielewski*, 890 F.3d at 948.

at 670), but that another reason was he worked with her every day and "already knew what her capabilities were" (*id.* at 656). Specifically, he testified that he "did not interview her because [he] felt that she did not ultimately meet other qualifications that [he] felt she should have moving into that senior-level HR role." (*Id.* at 657). Ms. Collins' counsel impeached Mr. Carow's testimony about his concern over Ms. Collins' qualifications by eliciting his admission that at his deposition, the only reason he gave for his failure to interview Ms. Collins was his concern about the relationship with Mr. Gill. (*Id.* at 671). Because Mr. Elrod denied having any part of the decision about who to interview, he did not give a reason for declining to interview her.

Ms. Collins married Mr. Gill on July 15, 2017. (Doc. 131 at 326). Ten days later, Mr. Carow and Mr. Elrod asked Ms. Collins if she had married Mr. Gill and she confirmed that she had. (*Id.* at 237). Koch Foods terminated her employment within thirty minutes of her admission. (*Id.* at 241). On July 31, 2017, a few days after Ms. Collins' termination, Koch Foods offered Mr. Ware the Complex Human Resources Manager position. (*Id.* at 252, 660).

At the time Ms. Collins was fired, she was earning $65,000 annually, or $1,247.89 per week, as a Human Resources Manager. (Doc. 131 at 250). She testified that the Complex Human Resources Manager position paid $105,000 to $125,000 annually. (*Id.* at 251). Koch Foods offered a 401k, health, vision, and

dental insurance, and short- and long-term disability insurance as benefits of employment, the value of which amounted to 31% of her base salary. (*Id.* at 257, 265). She also received an annual bonus. (*Id.* at 257–60; Doc. 127-10). Mr. Carow testified that on average, the annual bonus ranged from fifteen to nineteen percent of an employee's salary. (Doc. 131 at 663). Mr. Birchfield testified that the annual bonus "could be as high as 50 percent," although he had never actually seen a bonus that high. (*Id.* at 158).

At the close of Ms. Collins' case, Koch Foods moved for judgment as a matter of law under Federal Rule of Civil Procedure 50. (Doc. 131 at 828–32). After the court denied Koch Foods' motion for judgment as a matter of law, Koch Foods rested and renewed its motion, which the court again denied. (Doc. 131 at 850–51).

The jury found that Ms. Collins' gender was a motivating factor in the decision to deny her a promotion in 2017, but that her gender was not a motivating factor in the decision to terminate her. (Doc. 113 at 1). The jury next found that Koch Foods would have promoted Ms. Collins if not for her gender. (*Id.* at 2). The jury awarded $262,000 in damages to compensate her for a net loss of wages and benefits "to the date of [the] verdict." (*Id.*). The jury expressly declined to award any emotional pain, mental anguish, or punitive damages. (*Id.* at 2–3).

## II.    DISCUSSION

The only claim on which Ms. Collins prevailed at trial is her failure-to-promote claim, brought under Title VII.  (Doc. 10 at 13–16; Doc. 68; Doc. 70 at 9–10; Doc. 113).  Title VII prohibits an employer from discriminating against a person based on, among other things, sex.  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may prove a Title VII claim in several ways, including by presenting circumstantial evidence of discriminatory intent.  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  In this case, Ms. Collins pursued a "mixed-motive" theory of liability under § 2000e-2(m), which provides that "an unlawful employment practice is established when the complaining party demonstrates that . . . sex . . . was a motivating factor for any employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m); *see Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 & n.4 (11th Cir. 2016).

In *Quigg*, the Eleventh Circuit explained that to survive summary judgment[7] on a mixed-motive claim under Title VII, the plaintiff must "offer[ ] evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) a protected characteristic was *a* motivating factor

---

[7] "[A]lthough the evidence considered when a district court rules upon a motion for judgment as a matter of law is different from the evidence considered when the court rules upon a summary judgment motion, the standard for granting summary judgment mirrors the standard for judgment as a matter of law, such that the inquiry under each is the same." *Chapman v. AI Transp.*, 229 F.3d 1012, 1025 (11th Cir. 2000) (en banc) (quotation marks omitted).

for the defendant's adverse employment action." 814 F.3d at 1239 (quotation marks omitted) (emphasis in original). However, if a plaintiff proceeds under a mixed-motive theory and the employer can demonstrate that it "would have taken the same action in the absence of the impermissible motivating factor, the court . . . shall not award damages." 42 U.S.C. § 2000e-5(g)(2)(B)(ii).

Koch Foods contends that it is entitled to judgment as a matter of law because (1) Ms. Collins failed to present evidence establishing that her sex motivated its decision not to promote her, and (2) it presented evidence establishing it would have made the same decision (not to promote her) regardless of her sex. (Doc. 130 at 6–18). In the alternative, Koch Foods moves for remittitur of the $262,000 damages award because Koch Foods' non-discriminatory termination of Ms. Collins' employment a month after it declined to promote her cut off the accrual of back pay. (*Id.* at 18–23). The court will address the sufficiency of the evidence first, followed by the remittitur issue.

### 1. Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(a) permits the court to "resolve [an] issue against [a] party" if the party "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1)(A). If the court

denies the Rule 50(a) motion, Rule 50(b) permits the movant to file a renewed motion for judgment as a matter of law.

"Under Federal Rule of Civil Procedure 50, judgment as a matter of law is appropriate only if the facts and inferences point [so] overwhelmingly in favor of one party . . . that reasonable people could not arrive at a contrary verdict." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010) (quotation marks omitted; alterations in original); *see also Christopher v. Florida*, 449 F.3d 1360, 1364 (11th Cir. 2006) (holding that the court must deny a motion for judgment as a matter of law "if there is substantial conflict in the evidence, such that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions.") (quotation marks omitted).

In making that determination, "[a]ll reasonable inferences are drawn in favor of the nonmoving party, no credibility determinations may be made, the evidence may not be weighed, and evidence that the jury need not have believed is to be disregarded." *Chmielewski*, 890 F.3d at 948. However, "the court should give credence to . . . that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves*, 530 U.S. at 151 (quotation marks omitted). "A court should not generally grant a directed verdict based solely on the favorable testimony of an interested witness, even if this testimony is uncontroverted." *Hibiscus Assocs. Ltd.*

*v. Bd. of Trustees of Policemen & Firemen Ret. Sys. of City of Detroit*, 50 F.3d 908, 921 (11th Cir. 1995). But the court may do so "where the uncontroverted testimony of an interested witness is inherently plausible and corroborated by other evidence." *Id.*

There is no dispute that Koch Foods took an adverse employment action against Ms. Collins by failing to promote her. Accordingly, the question is whether a reasonable jury could find that Ms. Collins' sex was a motivating factor for the failure to promote her. If it could have made that finding, the next question is whether Koch Foods' same-decision defense protects it from liability. The court will address each question separately.

### a. Whether a Reasonable Jury Could Find that Ms. Collins' Sex was a Motivating Factor Behind the Decision not to Promote Her

As an initial matter, Koch Foods argues that because "the evidence does not rise to the level of the conduct alleged in *Quigg*," this court must grant judgment as a matter of law. (Doc. 130 at 8). In *Quigg*, the plaintiff was a school superintendent whose school board declined to renew her contract. 814 F.3d at 1232. Three members of the seven-member board had made statements evincing gender animus. *Id.* at 1233, 1241. Specifically, one board member told a school parent that "it is time to put a man in there"; two board members told the plaintiff that she needed to hire a "hatchet man" to serve as her assistant superintendent, and one of those two also told the plaintiff that she should consider hiring a male assistant superintendent

15

to achieve gender balance in the school administration; and one board member stated that she had voted not to renew the plaintiff's contract because she "needed a strong male to work under her to handle problems, someone who could get tough." *Id.* at 1241.

As the court said when Koch Foods moved for judgment as a matter of law during the trial, "there's a lot of real estate between the inferences that could be drawn in *Quigg*" and those that can be drawn in this case. (Doc. 131 at 849–50). In *Quigg*, multiple decisionmakers made statements showing "a desire for a male presence in the superintendent's office," although the statements still "require[d] inference to reach the conclusion that the Board members voted against [the plaintiff] based on her sex or gender." 814 F.3d at 1242 n.11. But *Quigg* did not set a minimum evidentiary standard for mixed-motive claims. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010) ("A holding that X + Y is enough to violate a provision does not mean that X alone is not enough. And that is true even if we say in the opinion that X alone would not be enough. We have pointed out many times that regardless of what a court says in its opinion, the decision can hold nothing beyond the facts of that case."). Nor did *Quigg* hold that the decisionmakers had to have made statements showing gender animus. And although the statements made in *Quigg* may have created a stronger inference of gender or sex discrimination than the actions taken in this case, *Quigg* does not hold that weaker inferences cannot

satisfy the plaintiff's burden to offer "evidence sufficient to convince a jury that . . . [a protected characteristic] was *a* motivating factor for the defendant's adverse employment action." 814 F.3d at 1239 (emphasis in original).

In support of her case, Ms. Collins presented evidence that Mr. Elrod and Mr. Thomas decided to promote Mr. Gill despite knowing that he was in violation of the anti-fraternization policy and that the promotion continued to present a conflict of interest. At the same time, Mr. Elrod and Mr. Carow declined to promote Ms. Collins on the purported basis that she violated the fraternization policy. Although Koch Foods argues that Mr. Carow was the only decisionmaker with respect to promoting Ms. Collins (doc. 130 at 13–14), as discussed above, a reasonable jury could find that Mr. Elrod was involved in the decision-making process.[8] *See* supra at 9 n.6.

---

[8] Because a reasonable jury could conclude that Mr. Elrod was a decisionmaker with respect to the failure to promote Ms. Collins, the court will not address in detail Koch Foods' arguments about Mr. Carow's reasons for declining to consider Ms. Collins for the promotion. (*See* Doc. 131 at 11–13). The court notes, however, that Ms. Collins impeached Mr. Carow's testimony that he declined to interview her based on his opinion about her readiness for the promotion by eliciting his admission that he did not give that as a reason when he was deposed. (Doc. 131 at 671). As a result, a reasonable jury could have disbelieved his trial testimony about his additional reason for not wanting to promote Ms. Collins. *See Reeves*, 530 U.S. at 151. Mr. Carow's only other reason for his decision was his concern about the conflict of interest created by the relationship between Ms. Collins and Mr. Gill. (Doc. 131 at 670). Unlike Mr. Elrod, there is no evidence that Mr. Carow was involved in the decision to promote Mr. Gill in the face of the conflict of interest, so that reason may have sufficed in the absence of evidence that Mr. Elrod was also involved in the decision not to promote Ms. Collins. But because a reasonable jury could find that Mr. Elrod was involved in both decisions, a finding in favor of Koch Foods based on Mr. Carow's testimony about his reason for not interviewing Ms. Collins would require the court to weigh his testimony against the evidence of Mr. Elrod's involvement, which the court cannot do. *See Chmielewski*, 890 F.3d at 948.

Ms. Collins and Mr. Gill violated the same anti-fraternization policy and their relationship created the same conflict of interest. Indeed, they violated the policy with each other and the conflict of interest was based on their relationship with each other. Yet Mr. Elrod—a decisionmaker involved in both promotion decisions—concluded that the conflict prevented only Ms. Collins' promotion, not Mr. Gill's. And although Koch Foods presented evidence that it believed Mr. Gill was a very valuable employee to the company, Ms. Collins presented evidence that, until she applied for the promotion in 2016, Koch Foods and Mr. Elrod had believed that she too was a very valuable employee to the company. (Doc. 131 at 107, 109–10, 599; Doc. 128-2 at 6). Based on that difference in treatment, a reasonable jury could find that *a* motivating factor behind the failure to promote Ms. Collins was her sex.[9]

Koch Foods argues that Mr. Elrod has a history of promoting women into the position of Complex Human Resources Manager at other complexes. (Doc. 130 at 13–14). Mr. Elrod's testimony about the other promotions he has approved was undisputed. (Doc. 131 at 595, 618). But granting judgment as a matter of law to Koch Foods based on the evidence that Mr. Elrod has promoted other women would require the court to weigh those promotions against the evidence surrounding Koch

---

[9] The court agrees with Koch Foods that no reasonable jury could find that Koch Foods violated its own hiring policy by seeking external candidates. (*See* Doc. 130 at 9–13). The plain language of the policy allowed the decisionmaker discretion to seek external candidates. (Doc. 127-15 at 4; *see also* Doc. 131 at 495, 501–02).

Foods' failure to promote Ms. Collins. The court cannot do so. *See Chmielewski*, 890 F.3d at 948.

Koch Foods also argues that because the jury rejected Ms. Collins' termination claim, it necessarily rejected her theory that Koch Foods applied the fraternization policy inconsistently by promoting Mr. Gill despite his violation of the policy. (Doc. 130 at 15). The court cannot grant judgment as a matter of law on that basis. To the extent the argument rests on a finding by the jury, the court is not permitted to consider a jury's factual findings in addressing a Rule 50(b) motion. *See Chaney v. City of Orlando*, 483 F.3d 1221, 1228 (11th Cir. 2007) ("The jury's findings should be excluded from the decision-making calculus on a Rule 50(b) motion, other than to ask whether there was sufficient evidence, as a legal matter, from which a reasonable jury could find for the party who prevailed at trial."); *see also Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 724 (11th Cir. 2012) ("Only the sufficiency of the evidence matters; what the jury actually found is irrelevant."). And, for the same reason, the court cannot grant judgment as a matter of law based on inconsistent verdicts. *Connelly v. Metro. Atlanta Rapid Transit Auth.*, 764 F.3d 1358, 1363 (11th Cir. 2014).

Ms. Collins' failure-to-promote claim was not very strong, but sufficient evidence exists for a reasonable jury to find that a motivating factor behind Koch

Foods' decision not to promote her was her sex.  Accordingly, the court cannot grant judgment as a matter of law to Koch Foods on that basis.

### b.  Koch Foods' Same-Decision Defense

Koch Foods contends that it is entitled to judgment as a matter of law because it has established the "same-decision" affirmative defense by presenting evidence that (1) Ms. Collins' relationship with Mr. Gill created a conflict of interest that precluded promoting her and (2) Mr. Carow felt that Ms. Collins was not ready for the promotion.[10]  (Doc. 130 at 16–19).

The court notes at the outset that the "same-decision" defense does not protect a defendant from a finding of liability.  Instead, it protects the defendant from imposition of monetary damages and certain forms of equitable relief.  *See* 42 U.S.C. § 2000e-5(m); *Quigg*, 814 F.3d at 1239 n.9 ("[T]he 'same decision' defense does no more than allow an employer to avoid damages and certain forms of equitable relief

---

[10] Ms. Collins argues that Koch Foods has waived this issue by failing to move for judgment as a matter of law on its defense before the jury began deliberating.  (Doc. 132 at 50).  It is true that a renewed motion for judgment as a matter of law "cannot assert grounds . . . that [the movant] did not raise in the earlier motion."  *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1245 (11th Cir. 2001).  It is not clear that Koch Foods raised its same-decision defense in its initial Rule 50 motion.  In that oral motion, Koch Foods argued that it had articulated legitimate, non-discriminatory reasons for selecting Mr. Ware over Ms. Collins.  (Doc. 131 at 830–31).  The "legitimate, non-discriminatory reason" language is drawn from the *McDonnell-Douglas* test, which is inapplicable in a case proceeding under the mixed-motive theory of liability.  And articulating a legitimate, non-discriminatory reason is not precisely the same as proving that the employer would have made the same decision in the absence of impermissible bias, although they certainly have substantial overlap.  But because the court concludes that a reasonable jury could have rejected Koch Foods' defense, in the interest of completeness, the court will address the merits of Koch Foods' argument.

in a Title VII case."); *Harris v. Shelby Cty. Bd. of Educ.*, 99 F.3d 1078, 1084 (11th Cir. 1996) ("[The same-decision] defense, if proven, effectuates only a limitation on liability, not a complete avoidance of it.").  Accordingly, even if Koch Foods had established, as a matter of law, that it would have made the same decision regardless of Ms. Collins' sex, it would not be entitled to judgment with respect to its liability. It would be entitled to reduce the back pay damages to $0, but it would still owe attorneys' fees.  *See* 42 U.S.C. § 2000e-5(g)(2)(B)(i).

But in any event, Koch Foods has not established that a reasonable jury would have to find in its favor with respect to the same-decision defense.  As discussed above, a reasonable jury could find that Koch Foods—through at least one decisionmaker involved in both decisions—promoted Mr. Gill into a conflict despite its protestation that it could not promote Ms. Collins into the same conflict.  From that, "the jury would have had sufficient reason to disbelieve [Koch Foods'] proffered reason" for its employment action.  *Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 893 (11th Cir. 2011).  As for the second reason, a reasonable jury could have found that Mr. Carow was not the only decisionmaker.  And in any event, the jury could have disbelieved Mr. Carow's testimony that he did not think Ms. Collins was ready for the promotion because he was an interested witness and Ms. Collins impeached his testimony by eliciting his admission that, when he was deposed

earlier in the case, he did not give that as a reason for declining to interview her. *See Reeves*, 530 U.S. at 151.

Because Koch Foods' same-decision defense would not protect it from a finding of liability, the court cannot grant judgment as a matter of law on that basis. But in any event, a reasonable jury could have rejected that defense. Accordingly, the court **DENIES** Koch Foods' motion for judgment as a matter of law.

2. Remittitur

Although the jury found that Koch Foods had discriminated against Ms. Collins by failing to promote her, it also found that Koch Foods had not discriminated against Ms. Collins when it terminated her employment a month after she applied for the promotion. (Doc. 113). The jury awarded Ms. Collins $262,000 in back pay but declined to award any other compensatory or punitive damages. (Doc. 113). Accordingly, Koch Foods seeks remittitur reducing the award to $6,000, which reflects the difference in salary between Ms. Collins' application for the promotion (on June 28, 2017) and her non-discriminatory termination (on July 25, 2017), plus the value of access to a company cell phone. (Doc. 130 at 22–23).

The court "must grant . . . remittitur when the award exceeds the maximum limit of a reasonable range within which the jury may properly operate." *Warren v. Ford Motor Credit Co.*, 693 F.2d 1373, 1380 (11th Cir. 1982) (quotation marks omitted). Title VII provides that back pay is one form of equitable relief available

to a plaintiff who has established a discriminatory employment action. 42 U.S.C. § 2000e-5(g)(1). "Back pay is the difference between the actual wages earned and the wages the individual would have earned in the position that, but for the discrimination, the individual would have attained." *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1343 (11th Cir. 2005). It also includes "fringe benefits such as vacation and sick pay." *Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 263 (5th Cir. 1974). The award of back pay is meant to "place the injured party in the position he or she would have enjoyed absent discrimination." *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1510 (11th Cir. 1987). "[B]ack pay awards are limited to proven economic loss." *Darnell v. City of Jasper, Ala.*, 730 F.2d 653, 656 (11th Cir. 1984). But "unrealistic exactitude is not required as the back-pay calculation may be based on just and reasonable inference of the missing or imprecise figure." *Akouri*, 408 F.3d at 1343.

Ms. Collins contends that she applied for the Complex Human Resources Manager position on June 22, 2017, when she met with Mr. Elrod to tell him that she was going to apply for the position. (Doc. 132 at 18 n.6). In doing so, Ms. Collins relies on a footnote in the *EEOC v. Exel, Inc.*, 884 F.3d 1326, 1330 n.2 (11th Cir. 2018) decision, in which the Eleventh Circuit held that the plaintiff's informal application sufficed to establish that she had actually applied for the position. (Doc. 132 at 18 n.6). But in that case, the evidence showed that "other . . .

employees had received promotions through informal requests similar to [the plaintiff]'s," in addition to the fact that defense counsel conceded that the informal application was sufficient. *Exel, Inc.*, 884 F.3d at 1330 n.2. The *Exel* decision does not hold that an expression of interest in a promotion should be considered an application for a promotion.

Instead, the evidence shows that Ms. Collins applied for the Complex Human Resources Manager position on June 28, 2017. (Doc. 131 at 235; Doc. 128-7 at 2). Assuming, as Koch Foods does, that it could have given her the position on the same day she applied, the calculation of her back pay award would begin on June 28. Koch Foods contends that the jury could not award back pay after July 25, 2017, the date of Ms. Collins' non-discriminatory termination. (Doc. 130 at 21). The court may consider the jury's finding about Ms. Collins' termination in considering the propriety of remittitur. *Cf. Itel Capital Corp. v. Cups Coal Co., Inc.*, 707 F.3d 1253, 1261 (11th Cir. 1983) ("[R]eview of the jury's answers to the special interrogatories and the evidence presented at trial reveals no ground upon which to fault the trial judge's calculations" in reducing the jury award). So the court must determine whether an employer's non-discriminatory termination of employment cuts off the accumulation of back pay after a discriminatory failure to promote.

The parties have not cited, and the court has been unable to locate, any Eleventh Circuit precedent addressing whether a non-discriminatory but involuntary

termination of employment cuts off the accrual of back pay based on a discriminatory failure to promote. Based on an analogous back pay provision contained in the National Labor Relations Act, *see Brown v. A.J. Gerrard Mfg. Co.*, 715 F.2d 1549, 1550 (11th Cir. 1983) (en banc), the former Fifth Circuit has held that "losses willfully incurred" should be deducted from the back pay award. *NLRB v. Pilot Freight Carriers, Inc.*, 604 F.2d 375, 377 (5th Cir. 1979); *NLRB v. Aycock*, 377 F.2d 81, 87–88 (5th Cir. 1967); *see also U.S. EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1252 (11th Cir. 1997) (holding that the plaintiff's rejection of her former employer's offer of reinstatement cut off the accrual of back pay liability). But it is unclear whether an involuntary but non-discriminatory termination could be considered a "willfully incurred" loss.

The Eleventh Circuit's decision in *Archambault v. United Computing Systems, Inc.*, 786 F.2d 1507 (11th Cir. 1986) provides some guidance. In that case, the plaintiff proved that the employer's termination of his employment was discriminatory, in violation of the Age Discrimination in Employment Act. *Id.* at 1510–11, 1514. After the employer terminated the plaintiff, the employer eliminated the plaintiff's former position for legitimate, non-discriminatory reasons. *Id.* at 1514. The Eleventh Circuit held that the plaintiff was entitled to back pay only through the date that the position was eliminated because the employer had proved

by a preponderance of the evidence that it would not have continued to employ the plaintiff after his position was abolished.  *Id.* at 1514–16.

Similarly, in *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1358 (11th Cir. 1982), the plaintiff was employed in an eighteen-month training program.  The employer terminated his employment before the end of the program, in violation of Title VII. *Id.* at 1360.  The Eleventh Circuit held that the plaintiff was entitled to back pay only from the date of his discharge to the end of the training program because he had not presented any evidence that he would have continued employment past the end of the training program.  *Id.* at 1363.

Neither of *Archambault* nor *Walker* is on all fours with this case.  But the holdings in those cases indicate that a plaintiff's accrual of back pay must stop on the date of a non-discriminatory, albeit involuntary, termination of employment. Koch Foods proved to the satisfaction of the jury that it did not terminate Ms. Collins based on her sex.  Ms. Collins argues that the jury may have believed that she would not have been terminated if she had received the promotion that Koch Foods discriminatorily denied her.  (Doc. 132 at 55).  But other than the back pay award itself, she points to no evidence in the record supporting that speculative argument. Under *Archambault* and *Walker*, the court cannot allow the continued accrual of back pay without some supporting evidence.

The next question is whether, given the cut-off date of July 25, 2017, $262,000 in back pay "exceeds the maximum limit of a reasonable range within which the jury may properly operate." *Warren*, 693 F.2d at 1380 (quotation marks omitted). It does. At the earliest, Ms. Collins could have been promoted on the day she applied: June 28, 2017. At that time, she was earning $65,000 annually, plus benefits and bonuses. (Doc. 131 at 250–51, 265). With the promotion, she could have earned up to $125,000 annually, plus benefits valued at 31% of her base salary and bonuses of up to fifty percent of her salary. (*Id.* at 158, 250–51, 265). For one month's employment, she could have earned up to $4,615.38 more in salary, plus $1,430.77 in the value of her benefits, and up to $4,807.69 as a bonus (assuming she could have received the full, albeit unprecedented, fifty percent annual bonus). A jury, therefore, could have found that she would have earned $10,853.84 between June 28 and July 25, not including prejudgment interest.

In the Eleventh Circuit, a district court awarding prejudgment interest for a back pay award must use the Internal Revenue Service's "prime rate to calculate the amount of prejudgment interest on back pay awards in Title VII cases." *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1512 (11th Cir. 1987). The court leaves the calculation of prejudgment interest to the parties and **ORDERS** them to file, in writing, **on or before April 20, 2020**, a joint statement indicating what prejudgment interest would be as of that date, based on a back pay award of $10,853.84.

Accordingly, the court **GRANTS IN PART** Koch Foods' motion for remitter. Because the court agrees that the jury's back pay award is excessive, the court **GRANTS** the motion for remittitur. However, because the court does not agree with Koch Foods that the maximum allowable award is $6,000, the court **DENIES** Koch Foods' request to reduce the verdict to $6,000.[11]

### III.    CONCLUSION

The court **DENIES** Koch Foods' renewed motion for judgment as a matter of law, but the court **GRANTS IN PART** and **DENIES IN PART** its motion for remittitur. The court **ORDERS** the parties to file, in writing, **on or before April 20, 2020**, a joint statement indicating what prejudgment interest would be as of that date, based on a back pay award of $10,853.84. Once the court has received that joint statement, it will enter the final judgment in this case.

**DONE** and **ORDERED** this April 10, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

---

[11] The court notes that typically the Seventh Amendment "requires that an order of remittitur be accompanied by an offer for a new trial," but because an award of back pay under Title VII is an equitable remedy, it "entails no rights under the seventh amendment." *Brown*, 597 F.3d at 1184 (quotation marks omitted).